NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARK C. JACKSON,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7028

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 10-908, Chief Judge William P. Greene, Jr.

---

Decided: May 20, 2011

---

MARK C. JACKSON, Starke, Florida, pro se.

KIMBERLY I. KENNEDY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director,

and KIRK MANHARDT, Assistant Director.  Of counsel on the brief was F. JOHN BRIZZI, JR., Deputy Assistant General Counsel, United States Department of Veterans Affairs, of Washington, DC.

——————————————

Before  BRYSON, CLEVENGER, and PROST, *Circuit Judges*.

PER CURIAM.

## DECISION

Mark C. Jackson petitions this court for a writ of mandamus ordering the Secretary of Veterans Affairs to pay disability benefits, lost wages, and punitive and compensatory damages for delay in evaluating his rehabilitation claim.  He also seeks orders compelling the restoration of his federal retirement status, mandating the State of Florida to restore his driving privileges, and requiring the deletion of derogatory content from a credit report.  We deny the petition.

## BACKGROUND

Mr. Jackson served in the military from 1989 to 1993. He has a service-connected disability based on an injury to his right foot.  In August 2003, Mr. Jackson presented himself for treatment of that injury.  He had surgery on his ankle and underwent a period of convalescence during which he was totally disabled.  The Board of Veterans' Appeals has since determined that the period of convalescence lasted from August 26, 2003, to February 29, 2004. On July 20, 2003, before his surgery and convalescence, Mr. Jackson applied for vocational rehabilitation and education benefits.  A rehabilitation plan was not drawn up until January 2005 because, according to the Department of Veterans Affairs ("DVA"), Mr. Jackson's surgery

and recuperation "made it difficult to develop a meaningful plan to address the veteran's career needs."

The plan that was ultimately drawn up indicated that Mr. Jackson would secure admission to the University of Florida by August 2005 and complete one academic year of training beginning at that time. The plan further indicated that Mr. Jackson would be provided several services, including "tuition, fees, textbooks, [and a] computer system plus a limited number of consumable supplies." On May 20, 2005, the plan was altered to indicate that Mr. Jackson would complete his associate's degree at South Florida Community College before transferring to the University of Florida.

After one semester, Mr. Jackson's rehabilitation benefits were terminated based on a determination that a vocational goal was not feasible for him. Mr. Jackson then reapplied for benefits, but his application was denied on March 27, 2006, for several reasons including his lack of a driver's license, his difficulty attending rehabilitation appointments, and his indications to the Social Security Administration and the Department of Veterans Affairs ("DVA") that he was not capable of working. Mr. Jackson appealed that denial to the Board on April 10, 2006. He also appealed several disability benefits determinations.

On October 6, 2006, the Board addressed Mr. Jackson's appeal in two decisions, one addressing disability benefits and the other addressing rehabilitation benefits. As to the disability benefits, the Board denied most of his claims, but it remanded some of his claims for further development. As to the rehabilitation benefits, the Board found that Mr. Jackson did not receive proper notice of what evidence the DVA was required to provide and what evidence he would be required to provide under the Vet-

erans' Claims Assistance Act of 2000 ("VCAA"). Accordingly, the Board remanded Mr. Jackson's appeal on rehabilitation benefits to the regional office via the Appeals Management Center ("AMC"), instructing the AMC to (1) inform Mr. Jackson of what he needed to present in order to prevail on his claim and (2) ensure that he received notifications pursuant to the VCAA. The Board decision noted that Mr. Jackson's claim must be afforded "expeditious treatment" on remand.

When there was little progress on remand, Mr. Jackson filed a petition for a writ of mandamus in the United States Court of Appeals for Veterans Claims ("Veterans Court") on February 14, 2008. That petition requested an order compelling the Secretary to pay past due benefits, punitive damages, and lost wages. The Veterans Court denied that petition because Mr. Jackson did not show that he had a "clear and indisputable right to the writ." Mr. Jackson appealed that decision to this court, which affirmed on December 17, 2008. We noted that we "underst[ood] Mr. Jackson's impatience with the lack of final resolution of his claim," but we concluded that the Veterans Court did not abuse its discretion in denying the writ. *Jackson v. Peake*, 303 Fed. App'x 881, 884 (Fed. Cir. 2008).

While that appeal was pending in this court, Mr. Jackson filed a second petition for a writ of mandamus in the Veterans Court on September 17, 2008. The Veterans Court ordered the Secretary to file an answer to the petition. On October 9, 2008, the Secretary advised the court that Mr. Jackson's claim for rehabilitation benefits had been denied by the DVA regional office in a January 11, 2008, Supplemental Statement of the Case ("SSOC"). That SSOC was pending at the Board when the Veterans Court denied Mr. Jackson's second petition for a writ of

mandamus on November 21, 2008. Mr. Jackson appealed that denial to this court, and we affirmed on May 7, 2009.

In January 2009, the regional office further developed Mr. Jackson's disability claims through a medical examination. The office did not perform any further work on his claim for rehabilitation benefits, since that claim had been denied in the January 2008 SSOC. Mr. Jackson filed another appeal with the Board addressing both issues. The Board advanced his appeal on its docket under 38 C.F.R. § 20.900(c). On September 8, 2009, the Board again remanded both issues to the regional office. The Board remanded the disability benefits claim for further medical evaluation and to provide Mr. Jackson an opportunity to present testimony in support of his case. The Board remanded the rehabilitation benefits determination to the regional office because the AMC did not give Mr. Jackson the notice required by the remand instructions in the Board's October 2006 decision. The Board therefore instructed that on remand Mr. Jackson be given the notice required by the VCAA and that he be given an opportunity to testify in support of his claim. In remanding both claims, the Board stated in boldface type "[e]xpedited handling is requested." Mr. Jackson appealed the rehabilitation benefits remand to the Veterans Court, but the court dismissed that appeal for lack of jurisdiction because it was not a final decision.

On remand, Mr. Jackson received the required VCAA notification and was given an opportunity to testify. On December 4, 2009, the regional office also restored Mr. Jackson's entitlement to a 20% rating for his right foot injury effective March 1, 2004. Although the regional office recognized that the new 20% disability rating affected Mr. Jackson's entitlement to rehabilitation benefits by rendering him eligible for independent living

services, the office did not immediately evaluate Mr. Jackson's entitlement to rehabilitation benefits because it transferred his claim folder to the Office of the General Counsel for use in pending appellate litigation. The claim folder was transferred on January 29, 2010, and was not returned to the regional office until May 28, 2010.

On March 18, 2010, Mr. Jackson filed a third petition for a writ of mandamus with the Veterans Court. That petition requested an order compelling the Secretary to "pay lost wages as a computer systems analys[t] in the amount of $120,000 per year for every year that VA has maliciously postponed [his] career." The court denied that petition on June 30, 2010, noting that it understood Mr. Jackson's frustration with the delay but concluding that he had not shown the delay to be unreasonable.

On November 17, 2010, Mr. Jackson filed a brief with this court that appears to constitute a new petition for a writ of mandamus. In that brief, he requests different relief than he requested in the March 2010 petition to the Veterans Court. For example, his submission to this court seeks $145,000 per year for lost wages instead of $120,000 per year. The government's response brief claims that Mr. Jackson is appealing the Veterans Court's denial of his March 2010 mandamus petition. Mr. Jackson does not take issue with the government's characterization in his reply brief.

On April 7, 2011, this court requested that the Secretary provide us with an account of the current status of Mr. Jackson's claim for rehabilitation benefits and explain the DVA's practice with respect to stopping benefits determinations while claim folders are transferred for appellate litigation. The Secretary responded on May 5, 2011. With respect to the transferring of claim folders,

the Secretary explained that the DVA takes several precautions to ensure that benefits determinations are not unnecessarily delayed during appellate litigation, but that some delays are unavoidable because the system is based on the use of hard-copy files.

As to the current status of Mr. Jackson's rehabilitation benefits claim, the Secretary explained that he was determined to be eligible for rehabilitation benefits and an evaluation begun on June 25, 2010. The Secretary added, however, that Mr. Jackson did not complete several forms required for the entitlement determination despite multiple requests to do so. Mr. Jackson's Vocation Rehabilitation Counselor had concerns about his employability, so Mr. Jackson was offered an extended evaluation plan to assist in determining if a vocational goal would be feasible. In December 2010, Mr. Jackson refused to participate in the proposed extended evaluation plan. Instead, he insisted that he be placed in a training program. The counselor did not believe that retraining was appropriate, and he closed Mr. Jackson's file on January 21, 2011.

Mr. Jackson also responded to this court's April 7, 2011, letter. In his response, he requested that the court order the government to investigate a variety of issues, including his brother's murder, proceedings in other courts, dealings with the Armed Forces, and interactions with the State of Florida and West Virginia University.

## DISCUSSION

Mr. Jackson requests an order from this court compelling the Secretary to pay past due disability benefits, lost wages, and punitive and compensatory damages. He claims entitlements to those payments based on allega-

tions that the Secretary committed a prohibited personnel practice under 5 U.S.C. § 2302 and violated the First and Fifth Amendments by canceling his rehabilitation benefits without due process.

We construe Mr. Jackson's brief as a petition for a writ of mandamus to this court, not an appeal from a denial of his mandamus petition at the Veterans Court. A writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947). This court can issue the writ only if three conditions are satisfied: (1) the petitioner must have no other adequate means to attain the relief he desires; (2) the petitioner must demonstrate a clear and indisputable right to the issuance of the writ; and (3) this court must be convinced that the circumstances warrant issuance of the writ. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004).

Mr. Jackson has failed to show a clear and indisputable right to relief based on alleged prohibited personnel practices under 5 U.S.C. § 2302 because has not shown that he was an employee of the federal government or an applicant seeking employment with the federal government.

He has also failed to show an indisputable violation of due process based on the cancellation of his rehabilitation benefits without timely review. The long delay in resolving his entitlement to rehabilitation benefits is certainly regrettable. The Board found that delay was due in part to the AMC's failure to follow the Board's October 2006 remand instructions. The Veterans Court held, however, that the AMC's failure was not sufficient to make the delay unreasonable, and we agree. It is unfortunate that the delay appears to have been exacerbated by Mr. Jack-

son's multiple mandamus petitions, but the regional office appears to have acted expeditiously in handling Mr. Jackson's claims after the September 2009 remand.

Even if the regional office had failed to act expeditiously in handling his claims on remand, Mr. Jackson has not shown a clear and indisputable right to the particular relief he has requested in this action. In his filing in this court, he requests an order compelling the Secretary to pay past due disability benefits, lost wages valued at $145,000 per year, and $13,800,000 in damages without showing why he is entitled to such relief. Similarly, he requests restoration of his federal retirement status without explaining why he is entitled to such relief. We therefore deny Mr. Jackson's petition with respect to those requests.

Mr. Jackson's other requests involving his driver's license, credit report, brother's murder, proceedings in other courts, and interactions with the State of Florida and West Virginia University are outside of our jurisdiction to address. Accordingly, he is not entitled to relief from this court as to those requests.

No costs.

**MANDAMUS DENIED**